# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**WAEL MAHMOUD,**

    **Plaintiff,**

    **v.**                                                                      **Case No. 24-CV-91-SCD**

**MICHELLE KING,**[1]
  *Acting Commissioner of the Social Security Administration,*

    **Defendant.**

## DECISION AND ORDER

Wael Mahmoud applied for Social Security disability benefits based on various physical and mental impairments. Relying on testimony from a vocational expert, an administrative law judge denied the claim for benefits, finding that Mahmoud could still perform certain jobs that existed in significant numbers in the national economy. Mahmoud seeks judicial review of that decision, arguing that the ALJ failed to satisfy his enhanced duty to develop a full and fair record when a claimant is unrepresented at the administrative level, as Mahmoud was. Because the ALJ failed to ensure that there was a reasonable basis to accept the vocational expert's job-number estimates, substantial evidence does not support the ALJ's decision. Accordingly, I will reverse the decision denying Mahmoud disability benefits and remand the matter for further proceedings.

---

[1] Michelle King became the acting commissioner of the Social Security Administration in January 2025. Accordingly, the clerk of court shall substitute King as the named defendant in this action. *See* Fed. R. Civ. P. 25(d).

## BACKGROUND

Mahmoud was born in Kuwait in 1977 to Egyptian parents. *See* R. 1160–62.[2] After college, he worked as an interpreter for U.S. troops stationed in Iraq. He moved to the U.S. in 2011, got married, and had two daughters. *See* R. 1384–85. Around 2013, Mahmoud separated from his wife, and his green card was taken away during the divorce proceedings. *See* R. 278, 1163, 1385, 1907. He got his green card back a few years later, obtained insurance coverage, and sought treatment for a variety of health issues, including post-traumatic stress disorder from his time working with the military, poor sleep, lower back pain, and urinary issues. *See* R. 525–29, 1160–64. Mahmoud worked for several years interpreting telephone calls for government agencies and other entities. *See* R. 29–30, 195–98, 272–73. However, he lost his interpreter job during the pandemic and worked briefly in a factory before getting a cashier position at Walmart. *See* R. 267, 272–73, 281–85, 481.

In August 2021, Mahmoud was diagnosed with prostate cancer after undergoing prostate resection surgery. *See* R. 414–38. He stopped working while in recovery and continued to seek treatment for urinary tract symptoms, back pain, and mental health issues. *See* R. 278, 417, 684–89, 855. Mahmoud tried returning to Walmart part time, but he had difficulty standing for long periods of time. *See* R. 27–28, 688–89. He also did some freelance interpreting work. *See* R. 27–28.

In September 2021, Mahmoud applied for disability insurance benefits under Title II of the Social Security Act. *See* R. 92, 188–94, 267–78, 291–99. He alleged that he became disabled on August 18, 2021—the date of his prostate surgery—due to prostate cancer, PTSD,

---

[2] The transcript is filed on the docket at ECF Nos. 11-1 & 11-2.

anxiety, back pain, and sleep apnea. The state agency charged with reviewing the application on behalf of the Social Security Administration referred Mahmoud for a psychological evaluation, and in June 2022, Mahmoud was examined by Steve Krawiec, PhD. *See* R. 1373–77, 1443. In December 2022, Mahmoud applied for supplemental security income under Title XVI of the Act. *See* R. 92, 239–48. The state agency denied Mahmoud's claim initially and upon his request for reconsideration. *See* R. 66–88.

After the state-agency denial, Mahmoud had a hearing before an ALJ. *See* R. 20–65. He was not represented by counsel at the hearing, and he said he was not interested in having representation. R. 24–25. Mahmoud told the ALJ that he had reviewed the exhibits on file and that the ALJ had all the records needed to decide his case. R. 25. He testified that he was unable to work due to joint pain, urination issues, PTSD, and difficulty focusing. *See* R. 25–50. According to Mahmoud, incontinence was his most troubling issue.

Joseph Entwisle testified at the hearing as a vocational expert. *See* R. 51–62. Entwisle testified that a hypothetical person with Mahmoud's vocational profile could not perform his past interpreter job if he were limited to a restricted range of light exertional work. R. 55–58. According to Entwisle, that person could still work as a housekeeper, a mail clerk, and a routing clerk. R. 57. Entwisle estimated that, within the national economy, there were 28,300 housekeeper jobs; 5,200 mail clerk jobs; and 51,7000 routing clerk jobs. Entwisle indicated that, while his testimony was largely consistent with the Dictionary of Occupational Titles, the DOT did not address some parts of the ALJ's hypothetical, including occasional contact with others, working at a variable pace, or the need for extra breaks. R. 56–58. For that testimony, Entwisle relied on his training, his education, his work experience, and relevant sources like the occupational requirement survey from the Bureau of Labor Statistics. R. 58.

3

The ALJ asked only two questions about the jobs Entwisle cited:

> Q      As far as the jobs you felt would be appropriate for those hypotheticals[,] have you observed those jobs being performed?
>
> A      Yes.
>
> Q      Have you placed people in those jobs?
>
> A      Yes.

R. 58. Mahmoud asked Entwisle several questions, but he did not inquire into the expert's methodology for arriving at his job-number estimates. *See* R. 58–62.

On September 21, 2023, the ALJ issued a written decision finding that Mahmoud was not disabled. *See* R. 89–116. The ALJ considered the disability applications under 20 C.F.R. §§ 404.1520(a) and 416.920(a), which set forth a five-step process for evaluating DIB and SSI claims. *See* R. 92–111. At step one, the ALJ determined that Mahmoud had not engaged in substantial gainful activity since his alleged onset of disability. R. 94–95. The ALJ determined at step two that Mahmoud had seven severe impairments: degenerative disc disease of the cervical and lumbar spine; degenerative joint disease of the bilateral knees; prostate cancer, status post resection; obesity; depression; anxiety; and PTSD. R. 95. At step three, the ALJ determined that Mahmoud did not have an impairment, or a combination of impairments, that met or medically equaled the severity of a presumptively disabling impairment listed in the social security regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1 (i.e., "the listings"). R. 95–98.

Prior to step four, the ALJ assessed Mahmoud's residual functional capacity—that is, the most he could do despite his physical and mental limitations, *see* 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ determined that Mahmoud had the RFC to perform light exertional work with certain postural, environmental, and mental health limitations. R. 98–99. In

arriving at that RFC, the ALJ considered Mahmoud's subjective allegations, the objective medical evidence, and the medical opinion evidence. R. 99–109. The ALJ determined at step four that Mahmoud could not perform his past relevant work as an interpreter. R. 109.

At step five, the Social Security Administration "bears the burden of demonstrating that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Ruenger v. Kijakazi*, 23 F.4th 760, 761 (7th Cir. 2022) (per curiam) (citing 20 C.F.R. § 416.960(c)(2)); *see also* 20 C.F.R. § 404.1560(c)(2). Relying on Entwisle's testimony, the ALJ determined that, despite his limitations, Mahmoud could still work as a cleaner/housekeeper, a mail clerk, and a routing clerk. R. 109–11. The ALJ also relied on Entwisle's testimony to conclude that those jobs existed in significant numbers in the economy, meaning Mahmoud was not disabled.

The Social Security Administration's Appeals Council subsequently denied Mahmoud's request for review, R. 7–11, making the ALJ's decision a final decision of the Commissioner of the Social Security Administration, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)).

In January 2024, Mahmoud filed this action seeking judicial review of the Commissioner's decision denying his claim for disability benefits under the Social Security Act, 42 U.S.C. § 405(g). *See* Compl., ECF No. 1. The matter was reassigned to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 4, 6, 7. Mahmoud filed a brief in support of his disability claim, ECF No. 17; the Commissioner filed a brief in support of the ALJ's decision, ECF No. 25; and Mahmoud filed a reply brief, ECF No. 28.

## LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, modify, or reverse the Commissioner's decision, with or without remanding the matter for a rehearing. A reviewing court will reverse the Commissioner's decision "only if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

"Substantial evidence is not a demanding requirement. It means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Martin*, 950 F.3d at 373 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019)). "When reviewing the record, this court may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, the court must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

## DISCUSSION

Mahmoud seeks remand for a rehearing, arguing that the ALJ failed to assist him in developing the record. "While a claimant bears the burden of proving disability, the ALJ in a Social Security hearing has a duty to develop a full and fair record." *Nelms v. Astrue*, 553 F.3d

1093, 1098 (7th Cir. 2009) (citing *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991)). "This duty is enhanced when a claimant appears without counsel," *id.*, as Mahmoud did at the administrative level. "When faced with a pro se claimant, the ALJ must 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" *Rennaker v. Saul*, 820 F. App'x 474, 479 (7th Cir. 2020) (quoting *Nelms*, 553 F.3d at 1098) (cleaned up). "Although pro se litigants must furnish some medical evidence to support their claim, the ALJ is required to supplement the record, as necessary, by asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information." *Nelms*, 553 F.3d at 1098 (citations omitted).

Nevertheless, reviewing courts generally defer to "the reasoned judgment of the Commissioner on how much evidence to gather, even when the claimant lacks representation." *Nelms*, 553 F.3d at 1098 (citing *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994); *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994)). To overcome this deference, the plaintiff must show that there is "a significant omission" in the record. *Id.* (quoting *Luna*, 22 F.3d at 692). "[A]n omission is significant only if it is prejudicial." *Id.* (citing *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997)). "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Id.* (quoting *Binion*, 13 F.3d at 246). "Instead a claimant must set forth specific, relevant facts—such as medical evidence—that the ALJ did not consider." *Id.* (citing *Nelson*, 131 F.3d at 1235; *Binion*, 13 F.3d at 245; *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)).

Mahmoud argues that the ALJ failed to satisfy his enhanced duty to develop a full and fair record. He first accuses the ALJ of not obtaining all the treatment records, noting that the

latest records were from May 2023.[3] However, Mahmoud does not identify any relevant treatment records that the ALJ failed to obtain, let alone records that could have changed the ALJ's decision. Mahmoud's speculation that there might be other evidence out there to support his disability claim, *see* Pl.'s Reply 2[4] ("Therefore, *it seems* the ALJ failed to update the records for the supplemental hearing.") (emphasis added), is insufficient to warrant a remand. Moreover, Mahmoud confirmed at the hearing that the record was complete. *See* R. 25. And the agency requested medical records through at least June 2023. *See* R. 392–94, 2294, 2632, 2638–45.

Mahmoud also criticizes the ALJ for not obtaining any medical opinions from his treating providers, including the urologist who treated his incontinence. As support, Mahmoud cites the general obligation of the agency to make a "reasonable effort" to obtain all medical evidence from the claimant's treating physicians. *See* Pl.'s Br. 14 (quoting 42 U.S.C. § 423(d)(5)(B)). Mahmoud, however, does not explain how the ALJ's efforts were unreasonable in this case. The record is more than 2,700 pages long, and most of those documents are medical notes and reports. Included within this lengthy record are documented attempts by the agency to obtain medical evidence. *See, e.g.*, 390–94, 409, 770, 917, 1313, 1378, 1400, 1454, 1589, 1622, 1792, 2632. Mahmoud provides no authority to support his suggestion that the ALJ needed to solicit a medical opinion from his treating providers. Nor does Mahmoud explain why he believes such an opinion would have altered the outcome of his disability proceedings.

---

[3] The ALJ held an administrative hearing in May 2023. *See* R. 24–25. However, because that hearing was not properly recorded, the ALJ held another hearing in August 2023. The ALJ issued his written decision a few weeks later, in September 2023. *See* R. 111.

[4] Citations are to the page numbers of Mahmoud's briefs, not those provided by the court's electronic case-filing system.

Finally, Mahmoud says the ALJ should have recontacted Dr. Krawiec, the consultative psychological examiner. Dr. Krawiec indicated that, while Mahmoud did not have a notable cognitive impairment, his depression symptoms "could certainly interfere with things such as persisting and maintaining pace." R. 1375. Dr. Krawiec further indicated that Mahmoud "could perhaps have difficulty maintaining well being in a work setting given his mental health difficulty." *Id.* The ALJ found Dr. Krawiec's opinions to be of limited persuasive value because he "offered fairly vague and contradictory assessments of the claimant's limitations that [did] not directly address the level of severity the claimant's limitations would reach." R. 108. Mahmoud insists that the ALJ should have recontacted Dr. Krawiec if he felt Krawiec's opinion was deficient. However, the authority Mahmoud cites in support of that argument does not impose upon the ALJ an independent duty to seek clarification of vague consultative examiner opinions. Even if there is such a duty, Mahmoud has not attempted to show that he was prejudiced by the ALJ's failure to heed to it. Notwithstanding Dr. Krawiec's vague opinions, the ALJ assessed several mental health limitations. *See* R. 98–109. Mahmoud, however, does not contend that he suffers from additional limitations not assessed by the ALJ.

Mahmoud also argues that the ALJ's examination of the vocational expert was deficient. "When the ALJ bases his decision on the testimony of a [vocational expert], substantial evidence requires that the ALJ 'ensure that the approximation is the product of a reliable method.'" *Fetting v. Kijakazi*, 62 F.4th 332, 339 (7th Cir. 2023) (citing *Brace v. Saul*, 970 F.3d 818, 821 (7th Cir. 2020)). "A 'precise count is not necessary,' but the vocational expert's testimony 'must be supported with evidence sufficient to provide some modicum of confidence in its reliability.'" *Chavez v. O'Malley*, 96 F.4th 1016, 1022 (7th Cir. 2024) (quoting *Fetting*, 62 F.4th at 339). "A methodology is reliable when it is based on 'well-accepted' sources

9

and the vocational expert explains her methodology 'cogently and thoroughly.'" *Ruenger*, 23 F.4th at 763 (quoting *Biestek*, 587 U.S. at 105).

Mahmoud relies primarily on *Rennaker v. Saul*, an unpublished appellate court decision. That case involved a claimant who was not represented at the administrative level and who did not question the vocational expert at the administrative hearing. *See Rennaker*, 820 F. App'x at 477. On appeal, the Seventh Circuit agreed that the ALJ failed to develop a full and fair record because his examination of the vocational expert was deficient. *Id.* at 478–79. The court first determined that the vocational expert's testimony, on its own, did not constitute substance evidence, as the expert "did not provide any reason for why he had a 'reasonable degree of confidence in his estimates.'" *Id.* at 479 (quoting *Chavez v. Berryhill*, 895 F.3d 962, 969 (7th Cir. 2018)). The court further determined that, given the sparse testimony, "the ALJ did not do enough to develop the [vocational expert's] testimony such that it would constitute substantial evidence." *Id.* The ALJ asked the vocational expert only one question about the jobs he cited—whether they were consistent with the job descriptions listed in the DOT. But because the DOT doesn't contain job-number estimates, the court found that consistency with that manual cannot "provide a basis for the job-number estimates' reliability." *Id.* Consequently, the court remanded the case to ensure that there was a reasoned basis to accept the vocational expert's job-number estimates. *Id.* at 479, 481.

Our case is materially indistinguishable from *Rennaker*. The vocational expert here testified that there were thousands of jobs in the national economy that someone with Mahmoud's vocational profile and RFC could perform. *See* R. 55–58. However, he did not explain where his numbers came from, the methodology used to determine them, or why he thought his estimates were reliable. Also, like the ALJ in *Rennaker*, the ALJ here did not

10

sufficiently develop the vocational expert's sparse testimony, even though Mahmoud was unrepresented at the time. The ALJ asked the vocational expert only two questions about the jobs he cited—whether the expert had observed those jobs being performed and whether the expert had placed people in those jobs. R. 58. Although the vocational expert answered "yes" to both questions, those responses do not provide any confidence in the expert's job-number estimates.

The Commissioner's attempts to distinguish *Rennaker* are unpersuasive. The Commissioner says that, unlike the ALJ in *Rennaker*, the ALJ here asked the vocational expert about the source of his testimony, and in response, the expert cited his education, his experience, and a survey he consulted. But the vocational expert cited those sources as the basis for testimony that was not addressed in the DOT; he did not tie them to his job-number estimates. *See* R. 58; *see also Rennaker*, 820 F. App'x at 479 ("Although the [vocational expert] pointed to his own education, research, training, and experience in job placement and vocational rehabilitation to explain the *kind* of work Rennaker could perform, the [vocational expert] did not explicitly tie this background to his estimate of nationwide job numbers."). The Commissioner also says that the vocational expert had top-of-the-line credentials. While that fact may support the general reliability of the vocational expert's testimony, it does not establish that his specific job-number estimates were the product of a reliable method. Finally, relying on *Chavez v. O'Malley*, the Commissioner notes that the vocational expert identified common occupations like a housekeeper and a mail clerk that clearly exist in significant numbers in the national economy. In *Chavez*, however, the Seventh Circuit found that the vocational expert provided a reliable basis for his testimony. *See Chavez*, 96 F.4th at 1022–24. The court did not hold that citing common jobs alone can satisfy the Commissioner's burden

11

at step five.

The Commissioner also seems to assert that Mahmoud waived or forfeited this argument by failing to raise it during administrative proceedings. However, the cases upon which the Commissioner relies, *see* Def.'s Br. 10–14, involved a claimant who was represented at the administrative level. As explained above, in the absence of counsel acting on Mahmoud's behalf, the ALJ had a duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Rennaker*, 820 F. App'x at 479 (quoting *Nelms*, 553 F.3d at 1098). The ALJ here did not satisfy that duty; instead of developing the record on the "critical" job-estimates issue, *see Brace*, 970 F.3d at 820, the ALJ took the vocational expert's estimates at face value and without any explanation. The substantial evidence standard may not be high, but it demands more in the case of unrepresented claimants.

## CONCLUSION

In sum, the ALJ had no reasoned basis to accept the vocational expert's job-number estimates. Substantial evidence therefore does not support the ALJ's finding at step five of the sequential evaluation process that there are a significant number of jobs in the national economy that Mahmoud could perform, notwithstanding his limitations. Accordingly, I **REVERSE** the Social Security Commissioner's final decision and **REMAND** this action to the Commissioner pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for further proceedings consistent with this decision. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 14th day of February, 2025.

_____
STEPHEN C. DRIES
United States Magistrate Judge